## TASKER et al. v. CRANE CO.

### (Circuit Court, N. D. Illinois. May 2, 1893.)

1. SALE—TEST—CONSTRUCTION OF CONTRACT.
   Where a contract for the manufacture and sale of gas pipes provides that the pipes when laid shall be tested with reasonable promptness, without indicating the nature of the test to be used, the proper mode of testing is that which is usual and customary in the trade with respect to such pipes.

2. SAME—REASONABLE TIME.
   A delay of several months before testing the pipes after they are laid is not reasonable promptness.

At Law. Assumpsit by Morris Tasker & Co. against the Crane Company for goods sold and delivered. Judgment for plaintiffs.

Albert B. Force, for plaintiffs.
Williams, Holt & Wheeler, for defendant.

JENKINS, Circuit Judge. The plaintiffs, on the 12th of July, 1890, contracted to furnish and deliver to defendant 20 miles of 8-inch standard nominal weight line pipe, made from soft iron free from blisters and other imperfections, and guarantied to stand a working line pressure of 1,000 pounds to the square inch when proved and tested in line, and proved tight in the line, which working test was to be made with reasonable promptness. The pipe was intended to be used in the construction of the gas line from the interior of Indiana to the city of Chicago, to be constructed by the Columbus Company, and was to be delivered not later than September 15, 1890, at railway stations to be designated by the Crane Company, and was so, in fact, delivered prior to that date. There was a subsequent parol agreement for the delivery of a certain quantity of 6-inch iron line pipe and 4-inch iron line pipe, touching which no question was made. In August, during the progress of delivery, the plaintiffs were notified that certain pipe arrived in a bad condition, and by their direction the pipe was laid aside, and, after that, returned, and accounted for by the plaintiffs; and the defendant was then instructed that it should not use one length of the pipe unless it was in perfect condition, but should return it. The pipe of a number of other manufacturers was likewise used in the construction of the line, and all the pipe appears to have been laid indiscriminately, without regard to whether it was manufactured by one party or another. It was so laid to suit the convenience of the con-

struction company, and according to the receipt of the pipe. In September some sort of an air test was made by the construction company in the presence of an officer of the Crane Company, of some miles of the pipe in line, and defects and leakage were found. But whether that leakage occurred in the pipe of the plaintiffs or in the pipe furnished by other manufacturers is not fully disclosed. In 1891 further air tests were made, and leakage then found, which was subsequently remedied by the construction company by the removal of the collars of the joints, and the substitution of another and different collar. Of these tests, or their result, no notice was given to the plaintiffs, and they had no knowledge that any such tests had been made until a time subsequent to the commencement of this action. All the pipe manufactured by them was subjected at the manufactory to a hydraulic test of 1,200 pounds to the square inch, and the pipe found to be perfect.

Whether such pipe, when laid in line, will prove sufficiently tight for the purposes for which it was intended, depends upon various considerations,—the strength of the pipe and of the joints and the threads, the character of the joint or collar, and the uniformity of the taper to the thread on the pipe and in the collar, and also upon whether the pipes are properly jointed and screwed together, the cleanliness of the threads when the pipes are united, and upon whether the surface upon which they are laid is even. At the time that the defendant forwarded to the plaintiffs the contract for execution, it desired that the plaintiffs should adopt the extra heavy coupling as made by the National Tube-Works Company for their standard or line work. It informed the plaintiffs that it had requested the tube-works company to forward to the plaintiffs a sample of this coupling, and requested the plaintiffs strictly to observe the gauge, eight threads to the inch, with five eighths of an inch taper, etc. This sample was received, and the couplings were made in strict conformity with the sample.

The defendant claims that it is entitled to offset against the amount due the plaintiffs for the pipe the expenses incurred in removing these collars and the substitution of other collars, such as were designed by the construction company, and which were used eventually in the construction of the line. I am of opinion that this offset ought not to be allowed. I am by no means satisfied that the leakage found can be attributed to any defect in the pipe or the threads. In view of the fact that certain defective pipes were found, and of the positive instruction of the plaintiffs to return all defective pipe, and to permit none to be laid, and that no further complaint of defective pipe was preferred, it is very cogent to my mind that there was no such defective pipe of the plaintiffs' manufacture found. If the leakage occurred by reason of the peculiarity of the collar used, it need only be observed that the collar was in exact accordance with the sample which the defendant furnished and desired to be used. It may be said also, with respect to the tests applied, that it is very peculiar that not only was no notice given to the plaintiffs when the tests were to be made, nor were they even notified of the result of the tests until long after this litigation had ensued.

The contract does not indicate the character of the test that was to be used. The proper construction, therefore, to be given the contract is that the parties intended that test which was usual and customary in the trade, with respect to pipe to be laid for the purpose of the conveyance of gas. The evidence satisfies me that the usual and customary test was the hydraulic test, and that this pipe came up to the standard required by the contract under such test. Where different manufactures of pipe are used, it may be difficult to prove which make fails to come up to the required standard, but this burden of proof is upon the defendant, and it has failed to satisfy me that the defect can be justly attributable to the plaintiffs' pipes. The severe test applied in 1891 was also not made with reasonable promptness within the provisions of the contract. Upon the whole, there must be a judgment for the plaintiffs for the amount which the parties have stipulated to be due if no offset should be granted, namely, in the sum of $8,890.71, and judgment for that amount is to be entered for the plaintiffs as of the 29th of April, 1893.